Filed 1/13/23 In re K.B. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | D080888 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. NJ15664) |
| Plaintiff and Respondent, | |
| v. | |
| H.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Honorable Michael Imhoff, Judge. Conditionally reversed and remanded with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Senior Deputy County Counsel for Plaintiff and Respondent.

# INTRODUCTION

H.B. (Mother)[1] appeals from the juvenile court's order terminating her parental rights for K.B.[2] pursuant to Welfare and Institutions Code section 366.26.[3] The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate inquiry into K.B.'s potential Native American ancestry, as required by the Indian Child Welfare Act (ICWA).

The Agency concedes that its investigation under ICWA was deficient. The parties filed a joint stipulation seeking the issuance of an immediate remittitur. We accept the stipulation, conditionally reverse, and remand for the limited purpose of ensuring compliance with ICWA's requirements.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

In September 2020, the Agency petitioned the juvenile court under section 300, subdivision (c), on behalf of 11-year-old K.B. The Agency alleged that K.B. was suffering from an emotional disorder which included suicidal

---

[1]    L.B. (Father) is not a party to this appeal.

[2]    As noted in H.B.'s appellate brief, the minor child prefers the pronouns "they/their" and recently changed names. But because the child was identified as "she/her" and by the prior name earlier in the case, Mother employs the "she/her" pronouns and the prior name (K.B.) throughout her brief to maintain consistency in writing. We will do the same. No disrespect is meant to the child by either practice.

[3]    Further undesignated statutory references are to the Welfare and Institutions Code.

[4]    Because Mother's challenge on appeal is limited to ICWA compliance, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issue on appeal.

ideation, anxiety and depression and that Mother failed to address the child's issues through treatment.

The Agency submitted a detention report on September 2, 2020. Although the Agency said in the detention report that it had "inquired of the parents/relatives about the Indian status/heritage of the child," the only documentation of the inquiry was that Mother denied being "a member of an American Tribe." Nevertheless, the detention report stated "ICWA does or may apply."

The court held an initial detention hearing on September 4, 2020. Father appeared by telephone, but Mother was not present. Both Father's and Mother's counsel represented that their clients had no Native American heritage. Based on counsel representations, the court said that it did "not have any reason to believe that the child would be considered an Indian child" and found that ICWA did not apply at that time. The court did not question Father directly about any potential Indian ancestry. Nor did the court order the parents to complete Parental Notification of Indian Status forms (ICWA-020) or instruct them to keep the court informed of any related new information.

About three weeks later, the Agency submitted an addendum report, which stated that the investigating social worker "completed a full ICWA inquiry with the father." That inquiry comprised of the following five questions:

1. Has anyone in the family ever lived on a reservation?
2. Has anyone in the family ever received any financial, medical, or education assistance from a tribe?
3. Does anyone in the family speak a Native American language?

3

4. Is anyone active in tribal activities such as tribal council meetings, religious rituals, or pow-wows?
5. Is any family member a member of a tribe or an enrolled member in a tribe?

Father denied any Indian ancestry during this inquiry. The social worker was unable to complete a similar inquiry with Mother as of an October 15, 2020, jurisdiction and disposition report. Still, the Agency reported that ICWA "does or may apply."

On December 9, 2020, the court held a contested adjudication and disposition hearing. The court found that notice pursuant to ICWA was not required "because the court knows the child is not an Indian child" based on a "[r]easonable inquiry." Subsequently, at a six-month review hearing on June 9, 2021, the court again found that notice pursuant to ICWA was not required because of a reasonable inquiry showing that K.B. is not an Indian child.

Shortly after, the Agency completed and filed an Indian Child Inquiry Attachment form (ICWA-010(A)). The ICWA-010(A) form stated that the social worker asked the parents about K.B.'s Indian ancestry. The Agency said this inquiry gave the social worker "no reason to believe the child is or may be an Indian child. Thereafter, the court proceeded to find both at a jurisdictional hearing on July 19, 2021, and at a contested section 366.26 hearing on August 3, 2022, that ICWA did not apply. Neither parent ever submitted an ICWA-020 form as of these hearings, nor is there any record of the court ever instructing either parent to keep the court informed of any related new information.

The appellate record shows that the Agency either spoke with or obtained the name, age, and city of residence of several of K.B.'s family members throughout these proceedings. On the maternal side, these family members included the maternal grandmother, T.B.; a maternal aunt, A.C.;

4

and a maternal uncle, T.M. On the paternal side, the Agency either spoke with or was aware of the paternal grandmother, B.D.; paternal uncles, T.D., B.D., and R.J.; a paternal aunt, A.A.; and a paternal adult sibling of the minor, A.B.[5] Although they were not mentioned in Mother's brief, the Agency also spoke with a maternal great-grandmother, B.T., and was aware of another paternal adult sibling of the minor, E.B. The Agency also spoke extensively with K.B., who was 11 years old at the start of the juvenile dependency case. There is nothing in the record to suggest that either the Agency or the juvenile court ever inquired of K.B. or any of these relatives about K.B.'s potential Indian ancestry.

Mother appealed, challenging only the court's compliance with the inquiry provisions of ICWA and the related state provisions under California law.

## DISCUSSION

Mother contends that the Agency and court failed to comply with their inquiry duties under ICWA. The Agency concedes, and we agree, that the inquiries were deficient. Because we conclude the error is prejudicial, we conditionally reverse and remand for the limited purpose of requiring compliance with ICWA.

## I.

### *ICWA Inquiry Duties, Generally*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement

---

[5] Mother argues that the Agency was also aware of the paternal grandfather. However, Father says that the paternal grandfather passed away.

with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); see *Isaiah W., supra*, at p. 9.)  An " 'Indian child' " is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"  (25 U.S.C. § 1903(4); accord § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

The first stage of initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (*D.S., supra*, 46 Cal.App.5th at pp. 1048–1049.)  ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and

6

who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent[.]" (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].) In addition, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" and "shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid*.)

II.

*The Agency's and the Juvenile Court's Inquiry*

Mother contends that there is no evidence to show that the juvenile court asked Mother, Father, or several identified family members about their possible Indian ancestry. The Agency concedes, and we agree, that the Agency and the court did not satisfy their initial inquiry obligations under ICWA.

The record reflects that both Mother and Father appeared at several hearings between September 2020 and August 2022, but the court never asked them about K.B.'s potential Native American ancestry. (§ 224.2, subd. (c).) The court also failed to instruct Mother or Father to keep the court apprised of any new information providing reason to know that K.B. is an Indian child. (*Ibid*.) Further, neither parent ever filed an ICWA-020 form in this case. (Cal. Rules of Court, rule 5.481(a)(2)(B), (C).)

7

The Agency also concedes, and we agree, that there were several available "extended family member[s]" whom the Agency did not ask about K.B.'s potential Indian heritage, as was statutorily required. (25 U.S.C. § 1903(2); § 224.1, subd. (c); § 224.2, subd. (b).) The Agency disagrees, however, that the three paternal uncles and a maternal uncle identified by Mother were sufficiently "available" to the Agency to trigger the duty of inquiry. But the record shows that the Agency either spoke with or had the full names, ages, and cities of residence for each of these family members. The Agency was therefore fully capable of either inquiring with these individuals or searching further for their contact information.

To fulfill their initial duty obligations, the Agency and the court were required to ask the parents and the extended family members about K.B.'s potential Indian ancestry, and the court was required to order the parties to keep it apprised of new ancestry information. If for some reason it was not possible to contact K.B.'s family members, the Agency should have documented why it was unable to interview them. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 745-746 (*Benjamin M.*).) Because this information "appears to have been both readily available and potentially meaningful," the Agency failed to comply with its duty of inquiry. (*Id.* at p. 744.) Thus, the Agency and court failed to satisfy their initial inquiry obligations under section 224.2, subdivisions (b) and (c).

## III.

### *Prejudicial Error*

We further conclude that the inquiry errors are prejudicial. Therefore, we conditionally reverse the court's order and remand the matter for the limited purpose of compliance with ICWA.

8

Because the failures in this case concern the Agency's and court's state statutory duties of inquiry, only state law is involved. Therefore, we may not reverse unless the error was prejudicial under state law. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [miscarriage of justice may be found when court concludes it is reasonably probable result more favorable to appellant would have been reached in absence of error].)

There is a split of authority among the California Courts of Appeal regarding how to apply this prejudicial error standard to cases in which agencies and/or juvenile courts have failed to satisfy their inquiry duties under ICWA. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777–782, review granted September 21, 2022, S275578, [discussing the "continuum" of three rules for assessing whether a defective inquiry is harmless or prejudicial, and adopting fourth rule].) The California Supreme Court has yet to resolve this split of authority.

For purposes of this appeal, however, we need not and do not weigh in on this highly disputed question. Rather, we conclude that the Agency's and the court's failure to satisfy their inquiry duties under ICWA has caused a miscarriage of justice. (Cal. Const., art. VI, § 13.) For example, if we apply the apparent "middle ground" standard set forth in *Benjamin M.* 70 Cal.App.5th at pp. 744–745, prejudicial error exists for at least two reasons. (*Ibid*. [prejudice exists and reversal required where "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"].)

9

First, the juvenile court failed to instruct Mother or Father to keep the court apprised of any new information providing reason to know that K.B. is an Indian child. Thus, these individuals do not appear to have been under any continuing order to inform the juvenile court of new information relevant to ICWA.

Second, the record before us shows that there was virtually no inquiry into K.B.'s potential Native American ancestry. The juvenile court failed to ever ask Mother or Father about potential Native American ancestry, and the Agency failed to ever ask numerous available relatives.

Based on these inquiry failures, we must presume that there was readily obtainable information that was likely to bear meaningfully on whether K.B. is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 745–746.)

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).) Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

DISPOSITION

The juvenile court's order issued at the section 366.26 hearing is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2. If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that K.B. is an Indian child, the order issued at the section 366.26 hearing shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know that K.B. is an Indian child, the juvenile court shall proceed accordingly. The remittitur shall issue immediately.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

11